IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TED HUTTEN, | ) |
| *Plaintiff,* | ) ) ) ) |
| v. | ) No. 17 C 5318 |
| RELIASTAR LIFE INSURANCE COMPANY, | ) ) Judge Virginia M. Kendall ) ) |
| *Defendant.* | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ted Hutten ("Hutten") brings this suit against Defendant ReliaStar Life Insurance Company ("ReliaStar") pursuant to Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), seeking relief in the form of long-term disability benefits allegedly due under an employee benefit plan. (Dkt. 1). Hutten and ReliaStar filed cross-motions for summary judgment under Federal Rule of Civil Procedure 56(a). (Dkts. 46, 47). For the reasons stated within, the Court denies both motions.

## BACKGROUND

Both parties submitted statements of material facts in accordance with Local Rule 56.1(a). (Dkts. 46-2, 48). Local Rule 56.1(b)(3) requires a party opposing a motion for summary judgment to serve and file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other

supporting materials relied upon." Where an opposing party fails to comply with its obligations under the Local Rules, the Court must take all facts presented by the moving party and supported by the record as admitted. *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921-22 (7th Cir. 1994). Here, Hutten has failed to file the required response to ReliaStar's statement of facts. Instead, in his response brief to ReliaStar's Motion for Summary Judgment, Hutten purports to issue a blanket admission to any of ReliaStar's facts that are recitations of medical findings, medical opinions, and the administrative history of Hutten's claim. (Dkt. 51, at pg. 3). Then, Hutten goes on to note his disagreement regarding diagnoses and physical limitations. *Id.* The Court assumes that Hutten offered this brief paragraph instead of the mandated paragraph by paragraph response for the sake of expediency. However, the interests of convenience do not serve to brush aside clearly articulated rules. Accordingly, to the extent the statements of fact in ReliaStar's submission are appropriately supported, they are deemed admitted.

**I. Hutten's Employment and ReliaStar's Welfare Benefit Plan**

Hutten was employed as a software developer by Cetera Financial Group, Inc., ("Cetera"). (Dkt. 53, ¶ 1). His occupation was classified as one with a sedentary physical demand. *Id.* at ¶ 33. Through his employment, Hutten was covered by a disability insurance policy ("the Policy") issued by ReliaStar. *Id.* at ¶ 1. The Policy defines Total Disability as:

> During the Elimination Period and the following 24 months, You are unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue Your Usual Occupation and You are not working in Your Usual Occupation … After 24 months of benefits,

> You are unable to engage with reasonable continuity in any occupation in which You could reasonably be expected to perform satisfactorily in light of Your age, education, training, experience, station in life, and physical and mental capacity.

(Dkt. 46-2, ¶ 5). The Policy contains a "Limitation for Mental Disorder, Alcoholism or Chemical Dependency" ("the Limitation") which provides certain restrictions to long-term coverage: "When Disability is due to Mental Disorder, Alcoholism or Chemical Dependency, ReliaStar Life limits Monthly Income Benefits to a maximum of 24 months while You are not Hospital Confined. … This maximum applies to any and all such Periods of Disability during Your lifetime." *Id.* at ¶ 6. Mental Disorder is defined in the Policy as:

> …any Sickness for which both of the following are true: It is listed in the current edition of the Diagnostic and Statistical Manual of Mental Health Disorders (or any successor diagnostic manual) published by the American Psychiatric Association. … Treatment is provided by a qualified Doctor using psychotherapy, psychotropic drugs, or other similar methods of treatment.

*Id.* at ¶ 7. The Policy defines Alcoholism as "a disorder of psychological and/or physiological dependence or addiction to alcohol which results in functional (physical, cognitive, mental, affective, social or behavioral) impairment." *Id.* at ¶ 8.

## II. Hutten's Disability Claim

Hutten stopped his work for Cetera on August 2, 2013 due to disability relating to psychosis and intractable epilepsy. (Dkt. 46-2, ¶ 10); (Dkt. 53, ¶ 2). On April 27, 2015, Hutten applied for long-term disability benefits under the Policy due to psychosis and intractable epilepsy. (Dkt. 46-2, ¶ 10). In support of his long-term disability claim, Hutten simply relied upon the materials submitted in conjunction

with his short-term disability claim in 2013. *Id.* at ¶ 11. In 2013, Hutten's psychiatrist, Dr. Michael Martin, M.D., certified Hutten's disability on the basis of major depressive disorder, severe anxiety, and panic. *Id.* at ¶ 12. Around that time, Hutten reported that he drank half a gallon of liquor a day. *Id.* Between 2013 and 2015, Hutten had significant episodes of alcohol abuse and was incarcerated after his third DUI. *Id.* at ¶¶17-18. Through 2015 and into 2016, Hutten had multiple hospital stays for treatment of depression, anxiety, hallucinations, alcohol intoxication, and suicidal ideation. *Id.* at ¶ 20. For treatment purposes, Hutten took a variety of antipsychotic and antidepressant medications. *Id.* at ¶ 21.

ReliaStar approved Hutten's disability benefits on September 4, 2015 due to depression and alcoholism. *Id.* at ¶ 27. Additionally, ReliaStar explained that these benefits were subject to the 24-month Limitation. *Id.* ReliaStar continued its investigation regarding Hutten's claim for physical disability based on seizures, but ultimately denied this claim on June 14, 2016. *Id.* at ¶¶ 27-33.

**III. Hutten's Appeal of his Physical Disability Claim Denial**

One week after the denial of his long-term physical disability claim, Hutten alleged that he was also limited by back pain that restricted his movement. *Id.* at ¶ 35. To support this new allegation, Hutten supplied medical records regarding a lumbar surgery in 2011. *Id.* at ¶ 35. Hutten began seeing a pain management specialist, Dr. Rajesh Patel, M.D., on June 29, 2016 for his back pain which he reported was "severe" and "chronic." *Id.* at ¶ 36. Hutten underwent an MRI on August 4, 2016 which showed a diffuse disc bulge, moderate left and moderate to

severe right foraminal stenosis at L4-L5, and mild central canal stenosis. *Id.* at ¶ 37. The impression of the MRI was an advanced degenerative disc disease. *Id.* Dr. Patel treated Hutten with injections and Norco, a pain killer. *Id.* at ¶ 38. As of November 2016, Hutten reported to Dr. Patel that he was stable on the prescribed medication and did not have any new pain or complaints. *Id.* at ¶ 39. The medical records appear to contain conflicting statements from Dr. Patel regarding Hutten's ability to perform at his sedentary job. On one form, Patel seems to report that Hutten can engage in a normal eight-hour day of sedentary activity yet in another form with the same date, he indicates that Hutten cannot sit for six to eight hours in one day. *Id.* at ¶¶ 40-41.

Hutten did not formally appeal ReliaStar's June 14, 2016 denial of his claim until November 28, 2016. *Id.* at ¶ 44. His appeal was based on multiple theories of disability including, dementia, epilepsy, traumatic brain injury, migraines, major depression with psychosis, and spinal stenosis. *Id.* Along with his appeal, Hutten submitted a neuropsychological evaluation from November 7, 2016, which was performed by Dr. Roy Gilliland, Ph.D. *Id.* at ¶ 45. Dr. Gilliland's impression was "both depression and a nonspecific dementia likely secondary to depression and seizure disorder." *Id.* Dr. Gilliland recommended treatment via continued psychotherapy and psychiatric consultation. *Id.* Hutten was also seen by a neurologist, Dr. Stephens. Dr. Stephens diagnosed Hutten with seizures, headaches, and dementia and noted he was permanently disabled, but reported no physical impairment. *Id.* at ¶ 46.

Hutten underwent a Functional Capacity Evaluation ("FCE") on December 12, 2016. *Id.* at ¶ 49. The parties dispute the ultimate conclusion of the FCE. Hutten maintains that the FCE indicates "that he had the physical capacity to perform no more than a four-hour day" (Dkt. 53, ¶ 11) while ReliaStar contends the report concluded the four-hour limitation was only with respect to light physical work which isn't a condition of his sedentary employment. (Dkt. 46-2, ¶ 49).

As part of its investigation in to Hutten's appeal, ReliaStar had consulting physician Dr. Stewart Russell, D.O., M.P.H., conduct a review of Hutten's medical record. *Id.* at ¶ 53. Dr. Russell questioned Dr. Stephens' disability certification for cardiac impairment when there were no records exhibiting any care for a cardiac condition. *Id.* at ¶ 57. He similarly called in to question Dr. Patel's findings from Hutten's MRI on his back. *Id.* at ¶ 58. Dr. Russell also criticized the FCE report's methodology and conclusions. *Id.* at ¶ 59. Finally, Dr. Russell reviewed Dr. Gilliland's neuropsychological evaluation of Hutten and concluded that the dementia diagnosis seemed "unlikely." *Id.* at ¶ 60.

Along with Dr. Russell, ReliaStar consulted with Dr. Malcom Spica, Ph.D. Dr. Spica's review of the records led him to the conclusion that Hutten's impairment was "due to undetermined etiology (possible contributions from Anxiety, Depression, history of alcohol dependence, and reported seizure disorder)" and that it was "most consistent with an overall depressive disorder." *Id.* at ¶¶ 63-64.

On February 28, 2017, ReliaStar informed Hutten it was affirming the denial of his physical disability claim. *Id.* at ¶ 65. ReliaStar justified its decision by stating

that Hutten did not have a physical condition which precluded him from performing full-time sedentary work and that any cognitive impairment was likely due to depression. *Id.* Since maximum benefits for depression had already been paid to Hutten, ReliaStar determined Hutten was not eligible for physical impairment benefits as of July 11, 2016. *Id.*

**IV. Hutten's Second Appeal**

Hutten initiated a second appeal of his benefit denial on April 13, 2017. *Id.* at ¶ 67. Drs. Russell and Spica reviewed the records submitted with the second appeal and did not alter their findings from the first appeal. *Id.* at ¶¶ 72-73. However, after reviewing supplemental materials from Hutten, Dr. Russell provided an addendum to his conclusions on May 3, 2017. *Id.* at ¶ 74. Dr. Russell wrote that he did not believe Hutten had Alzheimer's disease and "that [Hutten's] most likely cause of dementia is his alcohol-related condition." *Id.* at ¶ 74.

On May 17, 2017, ReliaStar sent a letter to Hutten upholding the benefit denial on the basis that Hutten did not establish he was disabled due to a physical condition as of July 11, 2016. *Id.* at ¶ 76.

## **LEGAL STANDARD**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Sorensen v. WD-40 Co.,* 792 F.3d 712, 722 (7th Cir. 2015). In determining whether a genuine issue of fact exists, the Court must take

the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees,* 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the Court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Anderson,* 477 U.S. at 248; *Drake v. Minnesota Mining & Mfg. Co.,* 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.") (internal quotations omitted). Though ERISA brings with it its own intricacies, the Court's review on summary judgment remains unchanged. "[A]s in any summary judgment, the moving party must establish in the district court that there is no genuine issue of material fact to be resolved at trial, and that judgment may be entered as a matter of law. If there is any doubt as to whether such an issue of fact exists, the summary judgment motion must fail." *Casey v. Uddeholm Corp.,* 32 F.3d 1094, 1096 (7th Cir. 1994).

# DISCUSSION

## I. Standard of Review and Burden of Proof

*De novo* review is considered "the norm" in ERISA litigation. *Krolnik v. Prudential Ins. Co. of America,* 570 F.3d 841, 843 (7th Cir. 2009). Analyzing a coverage dispute under ERISA is no different than the evaluation of a contract claim. *Id.* In *de novo* review, "the court decides on the record made in the litigation. And, if material evidence conflicts, then there must be a trial." *Id.* In conducting this review, the Court limits its analysis to the administrative record. *Id.*

As a threshold matter, the parties dispute which of them bears the burden of proof in determining benefit eligibility. The Policy itself provides that Hutten has the burden of establishing "due proof of loss," including "details covering the occurrence, the character and the extent of the loss for which claim is made." (Dkt. 46-1). Indeed, it is the default position that the insured seeking to enforce benefits must carry the burden of proving his entitlement to such benefits by a preponderance of the evidence. *Ruttenberg v. U.S. Life Ins. Co. in city of New York, a subsidiary of Am. Gen. Corp.,* 413 F.3d 652, 663 (7th Cir. 2005); *see also Daniliauskas v. Reliance Standard Life Ins. Co.,* 2018 WL 1336051, at *3 (N.D. Ill. Mar. 14, 2018). Hutten suggests however that the burden is reversed in cases where the question of coverage stems from a policy's exclusion section, the plan provider must satisfy the burden of showing the insured is not entitled to benefits. *See Fuja v. Benefit Trust Life Ins. Co.,* 18 F.3d 1405, 1408 (7th Cir. 1994). Therefore, the question becomes whether the

Policy Limitation, entitled, "Limitation for Mental Disorder, Alcoholism or Chemical Dependency," is properly classified as an exclusion under the policy.

The Seventh Circuit has not directly addressed this limitation/exclusion distinction and in advancing his argument, Hutten exclusively relies on *Deal,* a district court case considering a "Benefit Limitation" for disability caused by mental disorders. *Deal v. Prudential Ins. Co. of America,* 263 F.Supp.2d 1138 (N.D. Ill. May 23, 2003). There, the court found, without significant discussion, that the mental disorder limitation was equivalent to policy exclusions for purposes of determining which party bears the burden. *Id.* at 1143; *see also Okuno v. Reliance Standard Life Ins. Co.,* 836 F.3d 600, 609 (6th Cir. 2016) ("Reliance bears the burden to show that the exclusion on which it based denial of benefits, the Mental and Nervous Disorder Limitation, applies in this case."); *see e.g., Williams v. Grp. Long Term Disability Ins.,* 2009 WL 500626, at *7 (N.D. Ill. Feb. 27, 2008) ("The burden falls on the insurer to prove the applicability of a policy limitation. … Here Reliance bears the burden to show that Williams suffers from a condition that is the result of a mental disorder rather than a physical disorder."). For its part, ReliaStar counters that "a policy exclusion eliminates coverage all together" and that the Limitation in play here "simply defines the scope and terms of coverage for a certain type of claim." (Dkt. 52, pg. 13). *See e.g., Doe v. Prudential Ins. Co. of Am.,* 215 F. Supp. 3d 942, 949 (C.D. Cal. Oct. 5, 2016) ("Having considered the parties' arguments and the cases, the Court finds that the mental illness limitation is a limitation and not an exclusion. Plaintiff therefore has the burden of proof with respect to the mental health limitation.");

*Seaman v. Mem'l Sloan Kettering Cancer Ctr.,* 2010 WL 785298, at *10 (S.D.N.Y. Mar. 9, 2010) ("Seaman's disability is not a condition that is excluded from coverage, as evidenced by the fact that First Unum did pay 24 months of benefits and readily acknowledges that those payments were proper.").

While this open issue certainly presents compelling arguments on both sides, the Court need not resolve the question at this time. *See e.g. Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 83 (1st Cir. 2010) ("At least where, as here, the burden of proof is the preponderance of the evidence standard, how the burden is allocated does not much matter…"); *Watson v. Reliance Standard Life Ins. Co.,* 2017 WL 5418768, at *9 (N.D. Ill. Nov. 14, 2017). At this stage of the litigation, the Court must simply assess whether genuine issues of material fact exist and, if not, whether one party is entitled to judgment as a matter of law.

## II. Resolution by Summary Judgment

Throughout his claim and appeals process, Hutten has advocated a variety of conditions to support his long-term physical disability claim. However, on summary judgment, he argues that he is entitled to benefits due to his dementia and/or his back condition. (Dkt. 49). Significant factual disputes remain at this stage such as whether Hutten has dementia, what the cause of the dementia is, when the dementia began, does Hutten have a disabling back condition, to what extent does it prevent him from performing his duties as a software developer, and at what time did the back condition begin to limit his ability to work. Because of this, the Court finds this

matter is not amenable to summary judgment and instead the Court must sit as a finder of fact at a bench trial.

As presented to the Court, the matter is rife with factual disputes. One need look no further than the voluminous fact section in each party's brief that present markedly different accounts of Hutten's medical history, treatment, and diagnosis. To support their arguments regarding the above questions, the parties present several competing medical opinions and dispute multiple factual issues fundamental to the outcome. Unsurprisingly, these opinions reach diametrically opposed conclusions leaving the Court to weigh the credibility of each opinion and independently evaluate the Hutten's purported medical conditions and their most likely causes. The Court is more than capable of conducting such an assessment, but summary judgment is simply not the proper vehicle to do so. It is not within the court's authority to "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts" at summery judgment, rather "these are jobs for a factfinder." *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003) (citing *Anderson,* 477 U.S. at 255); *see also Uddeholm Corp.,* 32 F.3d at 1099 ("This language leaves no question that the district court improperly weighed the evidence in this case in arriving at its decision to grant summary judgment. … [T]he appropriate proceedings for such fact-finding is a bench trial and not the disposition of a summary judgment motion."); *cf. Kearney v. Standard Ins. Co.,* 175 F.3d 1084, 1095 (9th Cir. 1999) (en banc) ("The district judge will be asking a different question as he reads the evidence [at trial], not whether there is a genuine issue of material fact, but instead whether

[the plaintiff] is disabled within the terms of the policy. …. [T]rial on the record, even if it consists of no more than the trial judge rereading what he has already read, and making findings of fact and conclusions of law instead of a summary judgment decision, may have real significance.").

The Federal Rules of Civil Procedure and controlling authority leave little doubt — "if material evidence conflicts, then there must be a trial." *Krolnik,* 570 F.3d at 843. The parties offer conflicting evidence and it is not permissible at this juncture for the Court to wade into the waters of a finder of fact. *Waldridge,* 24 F.3d at 920 ("The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial."). Accordingly, the Motions for Summary Judgment must be denied.

## **CONCLUSION**

For the reasons stated within, the parties' Cross-Motions for Summary Judgment are denied. (Dkts. 46, 47).

_____
Virginia M. Kendall
United States District Judge

Date: March 18, 2019